**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**THOMAS KEATHLEY**                                                        **PLAINTIFF**

**V.**                                                                    **NO. 3:21CV261 M-P**

**BUDDY AYERS CONSTRUCTION, INC.**                                          **DEFENDANT**

**ORDER**

This cause comes before the court on the motion of defendant Buddy Ayers Construction, Inc. for summary judgment, based on judicial estoppel. Plaintiff Thomas Keathley has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, is prepared to rule.

The underlying lawsuit in this case involves simple negligence claims arising out of an automobile accident. In the instant motion, however, defendant Ayers seeks for this court to grant it summary judgment based not upon the substantive merits of plaintiff's negligence claim, but, rather, based on the fact that he failed to list it as an asset in his bankruptcy filings. On December 27, 2019, Plaintiff filed a Chapter 13 Petition for Bankruptcy and a Bankruptcy Plan, an amended version of which was confirmed by the bankruptcy court on April 20, 2020. [Affidavit of Bart Ziegenhorn, para. 4.] On August 23, 2021, plaintiff was involved in the automobile accident which gave rise to the instant lawsuit. Plaintiff concedes that, as of this date, he was aware of his cause of action in this case, but, acting through his bankruptcy attorney, he nevertheless filed Second, Third and Fourth Amended Chapter 13 Bankruptcy Plans which failed to list this cause of action as an asset of his bankruptcy estate. [Plaintiff's brief at

1

3]. Having learned of plaintiff's omissions in this regard, defendant has filed the instant motion for summary judgment based on judicial estoppel.

The instant motion presents a factual scenario which has arisen frequently in the Fifth Circuit, namely a plaintiff who failed to disclose a tort claim as an asset in his bankruptcy proceedings. As in many such cases in this circuit, the plaintiff has submitted an affidavit in which he assures this court that his failure to disclose this lawsuit was an honest mistake and that he had no intent to deceive the bankruptcy court or to gain any benefit through his mistake. [Docket entry 154-2] As is also generally the case, this court is unable to state one way or the other whether plaintiff's representations are accurate or not, since it has no way of ascertaining his subjective intent in this regard.

It strikes this court that, when confronted with this scenario, there are two approaches which a court might legitimately take in considering any judicial estoppel arguments. In the absence of proof of an intent to deceive, the first legitimate approach would be to give the plaintiff the benefit of the doubt and to allow him to submit amended bankruptcy filings, based partly upon the belief that it would be better for the bankruptcy creditors to be paid from the eventual proceeds of the lawsuit than to dismiss the action outright. The second legitimate approach would be to view this scenario from the perspective of protecting the integrity of the bankruptcy process and the federal courts as a whole and, accordingly, to give clear warning to any debtors thinking of failing to disclose lawsuits that, if their deception is discovered, they will not simply be allowed to plead an honest mistake and file an amended disclosure.

It is irrelevant which of these two approaches this court would prefer, since the Fifth Circuit has clearly opted for the second one. Indeed, this court is struck by the fact that, in its briefing in this case, defendant is able to counter every argument from plaintiff with a Fifth

Circuit decision rejecting a similar argument by a debtor/plaintiff. Plaintiff, by contrast, offers

this court nothing more than state court decisions or other non-binding authority, and the

decisions he cites are generally based on a very different weighing of the competing policy

considerations in this context than those made by the Fifth Circuit. As a district court sitting in

the Fifth Circuit, this rather glaring disparity in the parties' citations to authority cannot help but

have a very significant impact upon its resolution of this motion for summary judgment.

In considering plaintiff's arguments, this court notes at the outset that the fact that his

cause of action had not yet arisen when he made his initial Chapter 13 filing is immaterial, since

the law is clear that a debtor has a continuing duty to disclose contingent and unliquidated

claims, even if they did not arise until after the debtor had filed for bankruptcy. *See United*

*States ex rel. Bias v. Tangipahoa Parish School Bd*., 766 Fed. Appx. 38, 42 (5th Cir. 2019) ("But

our precedent is clear; Chapter 13 debtors must disclose post-petition causes of action); *Allen v.*

*C&H Distributors, LLC*, 813 F.3d 566, 572 (5th Cir. 2015) ("Chapter 13 debtors have a

continuing obligation to disclose post-petition causes of action."); *Love v. Tyson Foods, Inc.,* 677

F.3d 258, 261 (5th Cir. 2012) ("The obligation to disclose pending and unliquidated claims in

bankruptcy proceedings is an ongoing one.")

Plaintiff does not appear to dispute that he had an ongoing duty to disclose his cause of

action in this case,[1] arguing instead that:

> Plaintiff's cause of action for this instant matter accrued on the date of the wreck, August
> 23, 2021. Within a few weeks of the subject wreck, Mr. Keathley informed his
> bankruptcy attorney, Bart Ziegenhorn, of the wreck and his resulting personal injury
> claims. [See Affidavit of Thomas Keathley, para 6, marked a s Exhibit 2] Mr. Keathley
> believed that all he needed to do was inform his bankruptcy attorney of his personal

---

[1] Indeed, plaintiff writes in his brief that, at the time of his initial bankruptcy filing, he "was not
under any obligation or legal duty to disclose this claim at that time, because this claim had not
yet accrued." [*Id.* at 2]. This strikes this court as a tacit admission by plaintiff that he was
legally required to disclose his cause of action in his post-accident bankruptcy filings.

injury claims and that his attorney would handle whatever additional steps were necessary.  [See Affidavit of Thomas Keathley, para 7.]  Mr. Keathley never intended to make any misrepresentations concerning the existence of his personal injury claims. [See Affidavit of Thomas Keathley, para 8.]  Mr. Keathley does not know why his personal injury claims were not disclosed to the bankruptcy court.  [See Affidavit of Thomas Keathley, para 9.]

[Brief at 2-3].  Plaintiff further notes that, after defendant raised its judicial estoppel arguments,

he filed an amended bankruptcy plan which included this lawsuit as an asset.  [Brief at 9].

In arguing that he made an honest mistake in failing to list his cause of action among his

bankruptcy assets and that he has now corrected that mistake, plaintiff is treading a well-worn

path which has proven to be an inhospitable one for non-disclosing debtor/plaintiffs in the Fifth

Circuit.  This court notes that, in his brief, plaintiff provides a rather selective description of the

legal framework for resolving this issue, writing that:

> "Whether a debtor's failure to disclose claims was inadvertent presents a question of fact." *Love* 677 F. 3d at 262.  A debtor's failure to satisfy its statutory disclosure duty is 'only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *In re Coastal Plains, Inc*, 179 F.3d 197, 206 (5th Cir. 2019).  Plaintiff does not contest Defendant's position that he had knowledge of the undisclosed claims; however, Defendant cannot demonstrate that Plaintiff had motive for their concealment.

[Brief at 10].  While plaintiff correctly cites *Love* in stating that the key issue in this case is

whether he had a "motive for the[] concealment" of his claims, he fails to acknowledge that, in

that same decision, the Fifth Circuit approvingly cited a Mississippi district court decision for the

proposition that "[a]s one court has stated, 'the motivation sub-element is almost always met if a

debtor fails to disclose a claim or possible claim to the bankruptcy court. Motivation in this

context is self-evident because of potential financial benefit resulting from the nondisclosure.'"

*Love*, 677 F.3d at 262, *citing Thompson v. Sanderson Farms, Inc.,* 2006 U.S. Dist. LEXIS 48409,

at *12–13 (S.D. Miss. May 31, 2006).

4

This court reiterates that, in ruling upon these issues, it is simply following the directives of the Fifth Circuit, as best as it can understand them. Moreover, while it appears that neither side is able to cite a Fifth Circuit decision dealing with the exact same arguments and factual scenario as are presented here, that court's admonition that "the motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court" necessarily weighs heavily in this court's mind. In so stating, this court notes that it is undisputed that plaintiff did, in fact, "fail to disclose a claim or possible claim to the bankruptcy court" and he should thus have been prepared to argue why this case falls within the "almost always" exception to *Love*'s general rule. In reality, however, plaintiff does not confront this language in *Love* at all, choosing instead to conveniently omit it from his citation to that decision's holding.

As always when considering an issue lacking a Fifth Circuit decision directly on point, this court tends to favor the side which fully and accurately cites the authority which does exist, rather than the side which selectively quotes from it. In this case, plaintiff clearly falls within the latter category. This court further notes that, while defendant is able to cite one U.S. Bankruptcy Court decision, discussed below, which is very closely on point, plaintiff's primary authority is a Louisiana state court decision which strikes this court as contrary to Fifth Circuit precedent. Specifically, plaintiff relies upon *Tates v. Integrated Production Servs., Inc*., 244 So. 3d 716, 720-21 (Lou. Ct. App. 2017) for the proposition that "[t]o the extent any inconsistency exists, it has been cured by the filing of the amended schedule." [Brief at 8]. In so arguing, plaintiff relies upon *Tates'* holding that:

> In this case, protection of the judicial process is not necessary because the bankruptcy court has been informed of plaintiffs' pending tort suit. Additionally, plaintiffs' creditors could be harmed if this suit does not proceed, which would cause them to lose out on any potential recovery that might be owed to them.

5

*Tates*, 244 So. 3d at 720-21. (citation to another Louisiana state court decision omitted).

In *Tates*, as in this case, the plaintiff only filed an amended bankruptcy plan *after* the defendant had filed a motion to dismiss his tort action based on judicial estoppel. *Id.* at 717. The Louisiana Court of Appeals nevertheless found that this was good enough, based partly upon its belief that plaintiff's creditors would "lose out on any potential recovery that might be owed to them" if the tort action were dismissed. *Id.* at 721. It strikes this court that, in seeking to protect the bankruptcy creditors by increasing the pool of bankruptcy assets, the Louisiana Court of Appeals has made a fundamentally different policy choice than the one made by the Fifth Circuit in this context. In so stating, this court emphasizes that it will (seemingly) always be the case that allowing a late filing of an amended complaint will increase the pool of bankruptcy assets and thus work to the benefit of bankruptcy creditors in a particular case. While this may be regarded as a positive result, it also seems clear that adopting such a forgiving approach would greatly reduce a debtor's incentive to list any potential legal claims among his bankruptcy assets. This would, no doubt, result in an increase in fraudulent bankruptcy filings, with all the harm to the integrity of the bankruptcy process which that entails.

It is likely for this reason that, contrary to *Tate*'s finding that "protection of the judicial process is not necessary because the bankruptcy court has been informed of plaintiffs' pending tort suit," the Fifth Circuit has made it clear that a debtor cannot cure his failure to disclose a personal injury claim to a bankruptcy court after his omission has been challenged by an adversary. *See U. S. ex rel. Long v. GSDMIdea City, LLC*, 798 F.3d 265, 273 (5th Cir. 2015). Specifically, the Fifth Circuit wrote in *Long* that

> Even if Long's failure to disclose would not have actually harmed his creditors because he offered to reopen the bankruptcy to include the FCA claims, it would not change the outcome here. " 'Allowing [a debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary,

> suggests that a debtor should consider disclosing personal assets only if he is caught concealing them.' "

*Long*, 798 F.3d at 273, fn 6, *citing In re Superior Crewboats, Inc.,* 374 F.3d 330, 336 (5th Cir. 2004).

This court has no doubt that the Fifth Circuit was correct when it concluded that a rule of law which allowed a plaintiff to disclose a lawsuit only after being caught in a non-disclosure would provide perverse incentives for debtors to keep their potential tort actions to themselves and "wait and see" if they were caught in the act. This court further believes that it would be unfair to defendants who had gone to the effort and expense of uncovering the bankruptcy non-disclosure and paying attorneys to file a motion for judicial estoppel if the only consequence of "catching the plaintiff in the act" were that he simply filed an amended bankruptcy plan. Indeed, this court doubts that tort defendants would bother to incur the effort and expense in this regard if there were no potential benefit to them, and a major enforcement mechanism for uncovering bankruptcy fraud would thereby be lost. Moreover, it strikes this court that *Tate*'s rather myopic focus on the interests of the bankruptcy creditors in *one particular case* fails to acknowledge the broader harm which would be done to bankruptcy creditors *in general* if it became generally known among bankruptcy debtors that they faced no serious consequences for failing to disclose tort claims in bankruptcy filings. In that scenario, it seems highly likely that there would be many cases where bankruptcy debtors deliberately chose not to list legal claims among their assets and where such a deceit was never discovered, due partly to the absence of a party with sufficient incentive to make inquiries in this regard. In this scenario, it seems clear that bankruptcy creditors *in general* would lose out on an important source of recovery, and, that being the case, *Tate*'s focus on the creditors in one specific case seems rather short-sighted.

7

It strikes this court that, as with any difficult issue of law and equity, the policy arguments in this context are not completely one-sided, and plaintiff does, in fact, have a reasonable argument that a stringent application of the judicial estoppel rules would result in cases where plaintiffs who did, in fact, make an "honest mistake" will see their tort claims disappear. It further seems clear that, in such cases, tort defendants may obtain an undeserved windfall. Nevertheless, the fact remains that the Fifth Circuit has made a policy judgment that its highest priority is ensuring that debtors do not have an incentive to lie in their bankruptcy filings, and it is this court's obligation to follow that authority. By the same token, the fact that plaintiff's primary authority in this case is a Louisiana state court decision which is based upon a very different evaluation of the competing public policy considerations than that made by the Fifth Circuit makes it clear that he is swimming against a heavy current of adverse precedent in this circuit.

This court believes that it is incumbent upon an appellate court to make a broad policy judgment one way or the other on this issue, since the vast majority of these cases do not lend themselves to a clear finding either way regarding a bankruptcy debtor's intent. Simply stated, courts are not mind-readers, and it does not strike this court as being a productive line of inquiry for them to attempt to ascertain what a plaintiff may or may not have been thinking when he failed to list a tort claim as an asset in a particular bankruptcy case. In this case, plaintiff would have this court look at the recovery that his creditors seem poised to receive and conclude that, since they will be paid in full, he had no motive not to disclose his claim. Plaintiff's arguments seem to presuppose 1) that this court is sufficiently well-versed in Chapter 13 bankruptcy law and practice to make reliable factual findings regarding how much credence to give to the

representations of his bankruptcy attorney regarding the impact of non-disclosure in this case and

2) that a similar degree of knowledge should be imputed to plaintiff when he failed to list his

civil claim in his amended bankruptcy returns.  This court does not believe that either of these

presuppositions applies in this case.  As to the first presupposition, this court certainly does not

consider itself knowledgeable regarding Chapter 13 bankruptcy law, and it doubts that most

district courts are.  That being the case, it strikes this court as suspect judicial policy to place

district courts in the position of having to divine a particular plaintiff's intent based upon

assumptions regarding the bankruptcy effects of non-disclosure versus disclosure.  As to the

second presupposition, it strikes this court as similarly suspect to pretend that the average

Chapter 13 debtor is, effectively, in the position of a chess grand master thinking several moves

ahead regarding what the bankruptcy effects of his disclosure or non-disclosure might be.  This

court simply does not believe that the typical bankruptcy debtor is in a position to make such

precise calculations regarding the potential risks and benefits of disclosure versus non-disclosure.

That brings this court to two important holdings in this context which further inform its

ruling today.  The first is the Fifth Circuit's statement in *Long* that "[a] motivation to conceal

may be shown by evidence of a *potential* financial benefit that *could* result from concealment."

*Long*, 798 F.3d at 273 (emphasis added).  The fact that the Fifth Circuit used this "potential" and

"could" language makes it exceedingly difficult for any district court lacking expertise in

bankruptcy law to simply accept representations from a plaintiff or his bankruptcy attorney

regarding what the potential risks and benefits of non-disclosure were.  Indeed, even if this court

were to give credence to plaintiff's bankruptcy counsel's description of the impact of non-

disclosure, it would not change the fact that most debtors are not similarly well-versed in

bankruptcy law and, in many cases, they may simply conclude that the safer practice would be to

keep their civil claims to themselves to ensure that they do not have to share it with their

creditors.

The second holding which informs this court's ruling today is a US Bankruptcy Court

decision from this circuit,which involves facts and arguments remarkably similar to those here.

*See In re Watts*, 2012 WL 3400820, at *8 (Bankr. S.D. Tex. Aug. 9, 2012). This court finds

*Watts* highly persuasive not only because it applies Fifth Circuit law but also based on the fact

that it is written by a US Bankruptcy Judge who is (presumably) highly knowledgeable regarding

the bankruptcy effects of non-disclosure of claims. In *Watts*, the Bankruptcy Court for the

Southern District of Texas considered a plaintiff's arguments, virtually identical to those here,

that since the Bankruptcy Plan provides for 100% repayment of claims without interest, he had

no potential motivation to conceal his lawsuit. In rejecting this argument, the Bankruptcy Court

emphasized that:

> The Plan provides for 100% repayment of all claims, but these claims are being paid out over five years, and the Plan does not provide for payment of interest on those claims. [Finding of Fact No. 5]. Had the Debtors disclosed the Claim prior to confirmation, both the Trustee and the creditors would have had the opportunity to object to the Plan on the grounds that the Claim, if successful, would generate enough funds to pay interest on claims; and that the Plan, as proposed, should not be confirmed, when it was not filed in good faith-i.e. the projected disposable income available for unsecured claims would be higher if the Debtors modified the Plan to include use of any proceeds generated from the Claim to pay interest on the creditors' claims under § 1329(a)(3). *See* § 1325(a)(3) ("... the court shall confirm a plan if—the plan has been proposed in good faith ..."). By failing to disclose the Claim, the Debtors obtained confirmation of the Plan without having to pay interest.

*Watts*, 2012 WL 3400820, at *8.

In its brief, defendant notes that the Chapter 13 Bankruptcy Plan in this case similarly

involved a virtually identical payment of creditor claims over five years *without interest*.

Specifically, defendant writes that:

> The Bankruptcy Court's order confirming Plaintiff's amended plan gave him five (5) years/sixty (60) months from the June 27, 2022 date on which he filed his amended plan

> to make monthly, interest-free payments. Cf. Amended Plans, Doc. 142-4 and 142-5, to Bankruptcy Order, Doc. 142-6. Based on the precedent discussed hereinabove, Plaintiff's motive to conceal is self-evident. His interest-free payment plan spread over five years (from June 27, 2022) provides sufficient motive for Plaintiff in this case to conceal just as the interest-free payment plan spread over five years provided the plaintiff/debtor sufficient motive in *In re Watts* to conceal.

[Reply brief at 10].

This court finds defendant's argument persuasive, and it agrees that, under *Long*, there was "a potential financial benefit that could result from concealment" in this case. *Id.* This court further reiterates that the Fifth Circuit has made it clear that "the motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court," *Love*, 677 F.3d at 262, and there is, once again, no dispute that plaintiff failed to disclose his claim to the bankruptcy court in this case. As to plaintiff's argument that he told his attorney of his civil claim, the Fifth Circuit has held in related contexts that "mistake of counsel" generally does not suffice to demonstrate "good cause" to excuse non-compliance with the requirements of the Federal Rules of Civil Procedure. *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1306 (5th Cir. 1985). Plaintiff offers this court no authority suggesting that this general rule is inapplicable in the present context, and the fact that Fifth Circuit's holdings in bankruptcy non-disclosure cases make no mention of "mistake of counsel" as providing an effective defense to a finding of judicial estoppel suggests otherwise. In the court's view, mistake of counsel arguments are so common in cases where parties are seeking to have a court excuse a failure to comply with various rules that it seems quite unlikely that such arguments are what the Fifth Circuit had in mind when it used the "almost always" language in *Long*. Otherwise, cases where a debtor was excused for failing to disclose bankruptcy assets would not be rare ones, but common indeed. The general rule in this context appears to be based on the reality that parties in civil cases generally act through attorneys, and, that being the case, allowing them to escape

11

negative consequences for failing to comply with applicable rules based on mistakes of counsel

would, no doubt, lead to widespread failure to comply with those rules.

This court further notes that plaintiff's argument that he failed to make an explicit

representation to the bankruptcy court that he had no civil claims is rendered irrelevant by the

Fifth Circuit holding in *Tangipahoa* that "[b]ecause he had an affirmative duty to disclose post-

petition causes of action, [the debtor] impliedly represented that he did not have such a claim

when he failed to disclose this litigation to the bankruptcy court." *Tangipahoa*, 766 Fed. Appx.

at 41. In this case, plaintiff similarly made an implied representation to the bankruptcy court that

he had no post-petition cause of action when he filed multiple amended plans making no mention

of such claim. Moreover, defendant's reliance upon *Tangipahoa* illustrates, once again, how it is

seemingly able to respond to each of plaintiff's arguments with a helpful Fifth Circuit decision

on point.

The Fifth Circuit in *Tangipahoa* did not dispute that its judicial estoppel precedent is

rather harsh and unforgiving, but it expressly declined pleas from the plaintiff and *amicus curiae*

to relax its standards in this context. Specifically, the Fifth Circuit wrote in that decision that:

> [Appellant] and amici make various equitable and policy arguments that this standard is
> overly rigid. But our precedent is clear: Chapter 13 debtors must disclose post-petition
> causes of action. *See, e.g.*, *Allen*, 813 F.3d at 572; *Flugence*, 738 F.3d at 129 n.1 ("The
> continuing duty of disclosure is a longstanding gloss required by our caselaw."); *Jethroe
> v. Omnova Sols., Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) ("The obligation to disclose
> pending and unliquidated claims in bankruptcy proceedings is an ongoing one.");
> *Superior Crewboats, Inc. v. Primary P & I Underwriters ( In re Superior Crewboats Inc.
> )*, 374 F.3d 330, 335 (5th Cir. 2004) ("The duty to disclose is continuous."). [Appellant]
> and amici also argue that this "heightened disclosure" requirement is unduly burdensome,
> as it would require debtors to modify their bankruptcy plans each time they receive a
> paycheck or their property appreciates. These examples are inapt, however, because those
> paychecks and properties would already have been included in the debtor's original
> schedules. Thus, they would not need to be disclosed again. In contrast, [appellant] never
> disclosed this cause of action to the bankruptcy court. As the Eleventh Circuit has
> recognized, "The bankruptcy court is entitled to learn about a substantial asset that the
> court had not considered when it confirmed the debtors' plan." *Waldron v. Brown ( In re*

*Waldron* ), 536 F.3d 1239, 1245 (11th Cir. 2008). Thus, Bias's and amici's arguments are without merit.

*Tangipahoa,* 766 F. App'x at 42.  It is thus apparent that the Fifth Circuit has quite consciously adopted rigid and unforgiving standards in this context, and, that being the case, this court has no choice but to follow those standards.  Of course, the day may eventually come when the Fifth Circuit clarifies exactly what sort of case properly falls under the "almost always" language in *Long*, but plaintiff has provided this court no authority suggesting that this case, containing quite typical arguments of inadvertent error and mistakes of counsel, should be recognized as falling within the scope of this language.

In the court's view, the "bottom line" in this context is that, since courts are not, in fact, mind-readers, they will inevitably be forced to make a broad policy decision regarding whether a permissive or stringent approach to non-disclosure should be adopted, and, whichever way they decide, there may be unfair results which flow from that decision.  It seems clear that, if a court adopts a permissive approach, then, as noted by the Fifth Circuit, a simple risk-benefit analysis would "suggest[] that a debtor should consider disclosing personal assets only if he is caught concealing them."  *Long*, 798 F.3d at 273, fn 6.  The Fifth Circuit clearly believes that providing such perverse incentives for debtors to defraud their creditors is an unacceptable result, and it has accordingly adopted a stringent approach which "almost always" presumes that a failure to disclose assets was intentional.  This stringent approach will, no doubt, result in many debtors who did, in fact, make an honest mistake being barred from pursuing potentially meritorious tort claims.  It is unclear to this court whether the plaintiff in this case falls in this category, but, if so, then then this is a regrettable yet unavoidable result of the policy decision which the Fifth Circuit was forced to make.  This court is bound to follow the Fifth Circuit's decisions in this context,

13

and it accordingly finds that defendant's motion for summary judgment on the basis of judicial

estoppel is well-taken and should be granted.

It is therefore ordered that defendant's motion for summary judgment is granted.

A separate judgment will be entered this date, pursuant to Fed. R. Civ. P. 58.

This, the 9th day of August, 2023.


/s/ Michael P. Mills
U.S. DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI