IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**THOMAS KEATHLEY**                                                               **PLAINTIFF**

**V.**                                    **NO. 3:21CV261 M-P**

**BUDDY AYERS CONSTRUCTION, INC.**                                **DEFENDANT**

### ORDER

This cause comes before the court on the motion of plaintiff Thomas Keathley, seeking for this court to reconsider its ruling dismissing this case on the basis of judicial estoppel. The court, having considered the memoranda and submissions of the parties, is prepared to rule.

In his motion for rehearing, plaintiff cites what he characterizes as "newly discovered evidence," namely an affidavit which he obtained from Ms. Kellie M. Emerson after this court's adverse judicial estoppel ruling in this case. In her affidavit, Emerson describes herself as "a staff attorney for the Office of Mark T. McCarty, a Chapter 13 Trustee for the Eastern and Western Districts of Arkansas." [Affidavit at 1]. In his brief, plaintiff cites Emerson's affidavit for the proposition that "[i]n the Eastern District of Arkansas, it is not unusual for post-petition personal injury claims to be disclosed shortly before the settlement or resolution of the personal injury action," and he argues that this court should consider this alleged fact in granting his motion for rehearing. [Brief at 4].

This court notes that the practice alleged by Ms. Emerson is, apparently, a long-standing one in the Eastern District of Arkansas, and, as far as it can discern, nothing prevented plaintiff from obtaining and submitting that same affidavit before this court's ruling. This court's rulings

1

are not an invitation for an ongoing dialogue with the parties; to the contrary, both sides are obligated to collect and present whatever evidence they feel is relevant *before* this court has issued its ruling. Thjs court is simply not able to function as a trial court if the parties fail to follow this basic litigation practice.

While this court thus does not believe that Emerson's affidavit constitutes a proper basis for a motion to rehearing, it will offer some dicta addressing it, partly in order to offer guidance for future cases. In offering its views on this issue, this court begins with its belief that Emerson's affidavit actually *hurts* plaintiff's position in this case. In so stating, this court notes that a crucial factor in deciding judicial estoppel issues in the Fifth Circuit is whether a debtor can be inferred to have acted *intentionally* in failing to list a tort claim as an asset of the bankruptcy estate. As discussed in this court's order dismissing this case, the Fifth Circuit's stringent judicial estoppel jurisprudence means that a debtor who fails to disclose a tort claim is "almost always" inferred to have acted with intent. *Love v. Tyson Foods, Inc*., 677 F.3d 258, 261 (5th Cir. 2012), citing *Thompson v. Sanderson Farms, Inc.,* 2006 U.S. Dist. LEXIS 48409, at *12–13 (S.D. Miss. May 31, 2006).

If Emerson's affidavit is to be believed, then it is a common practice among bankruptcy attorneys in the Eastern District of Arkansas, presumably with full knowledge of what they are doing, not to list tort claims until shortly before they are settled or otherwise resolved. In other words, bankruptcy debtors in that district, acting through their attorneys, routinely make a conscious and intentional decision *not* to list tort claims which they know about until such time as those claims are close to being resolved. The litigation process is often a very slow one, and it thus seems clear that the practice described by Emerson will often result in a debtor/plaintiff keeping important information to himself for a very long period of time. As discussed below,

2

this practice seems to be motivated by a belief on the part of debtors and their attorneys that they can "get away with" late disclosure in Arkansas bankruptcy court, which is governed by Eighth Circuit judicial estoppel standards.

Plaintiff's brief appears to offer confirmation that the Eighth Circuit's judicial estoppel standards are more lenient than the Fifth Circuit's, listing the Eighth Circuit alongside the Third, Seventh and D.C. Circuits as the more permissive circuits in this regard. [Brief at 23]. Plaintiff's problem in this case is that he filed this action in a state within the jurisdiction of the Fifth Circuit, and the judicial estoppel law in this circuit is completely unsupportive of such a permissive "wait and disclose" approach. *See, e.g. Allen v. C&H Distributors, LLC*, 813 F.3d 566, 572 (5th Cir. 2015). In light of this fact, the proper course of action for plaintiff's bankruptcy attorney was to recognize that his Mississippi tort claim fell under the judicial estoppel jurisprudence of the Fifth Circuit, not the Eighth Circuit, and to research this circuit's law before deciding how to proceed. This court is well aware that lawyers are busy people, and it is certainly arguable that an Arkansas lawyer's failure to fully research these issues does not represent a particularly egregious form of neglect. Nevertheless, even a cursory review of the Fifth Circuit's judicial estoppel jurisprudence would have revealed that plaintiff's Mississippi tort claim was subject to a highly rigorous duty of disclosure, and it is difficult to excuse a lawyer not making himself aware of that fact.

This court notes that the Eastern District of Arkansas borders two states in the Fifth Circuit: Mississippi and Louisiana, and it believes that bankruptcy attorneys in that district would be well advised to learn their legal obligations when dealing with causes of actions which are being litigated in those states. In addition, it seems clear that the Fifth Circuit's approach gives a debtor's Mississippi *tort* counsel every motivation to get in contact with bankruptcy counsel

3

and ensure that prompt disclosure of the lawsuit's existence is made, lest it be dismissed based on a finding of judicial estoppel. There thus exist multiple attorneys with a motivation to research and apply the applicable law in this context, and this court has serious doubts that the Fifth Circuit would conclude that a lawyer's failure to research that law represents one of the exceedingly rare instances in which a debtor's non-disclosure of a tort claim in bankruptcy may be excused.

      Plaintiff's own evidence, in the form of Emerson's affidavit, suggests that the most likely reason for his failure to disclose the existence of his tort claim was that his Arkansas attorneys were acting – quite intentionally - in accordance with the more lenient disclosure practices which prevail in that state and federal circuit but which do *not* govern this case. At the end of the day, litigants act through their attorneys, and courts would not be able to function if they addressed the arguments and filings raised by counsel only to have to subsequently address different arguments and evidence offered by the parties themselves. Moreover, it seems clear that plaintiff would have this court do something which, judging by his briefing, the Fifth Circuit itself has never actually done: namely, hold that a particular case represents an exception to the "almost always" rule in this circuit relating to judicial estoppel. This court is confident that the Fifth Circuit would conclude that, while other judicial circuits are free to adopt more lenient judicial estoppel rules, lawsuits filed in Mississippi, Louisiana or Texas are subject to the judicial estoppel rules of *this* circuit. It further seems likely that the Fifth Circuit would interpret and apply its own law in such a manner as to encourage attorneys to research the law of this circuit before deciding whether or not to disclose a tort lawsuit to a bankruptcy court. Any holding otherwise would simply encourage attorneys not to research the applicable law before making important legal decisions.

4

In his reply brief, plaintiff argues that this court should regard the judicial estoppel issues in this case as presenting fact issues for a jury, since he insists that his failure to disclose was inadvertent and "summary judgment is particularly inappropriate in cases involving motivation and intent." [Reply brief at 3-4]. This argument is problematic on multiple levels. First, this court notes that plaintiff cites no Fifth Circuit decision which actually held that jurors should decide judicial estoppel issues under facts even remotely comparable to those here. Moreover, while plaintiff seeks to characterize his inadvertence arguments in this case as unique ones which are distinguishable from other judicial estoppel cases, the exact opposite is true, in this court's experience. Indeed, this court cannot recall a judicial estoppel case in which the plaintiff did *not* argue that his failure to disclose was a simple mistake, and, if making this argument were sufficient to render judicial estoppel a jury issue, then plaintiff would presumably be able to cite a long line of case law in which juries decided similar issues. He has failed to cite even one. Once again, the Fifth Circuit has made it clear that judicial estoppel "almost always" applies when a plaintiff fails to disclose a tort claim to a bankruptcy court, and, in so stating, it gave no indication that *jurors* should decide whether a particular case presents the "almost" scenario.

The Fifth Circuit's "almost always" language in *Love* leads this court to believe that the basic premise of plaintiff's argument that a jury should decide intent in this case is erroneous. Indeed, in arguing that motivation is a fact issue for jurors, plaintiff relies upon case law which arose in contexts where intent is an issue for the factfinder's resolution under a preponderance of the evidence standard, with no presumption involved. For example, plaintiff cites *Thornbrough v. Columbus and Greenville R. Co.,* 760 F. 2d 633, 640-41 (5th Cir. 1985) for the proposition that "summary judgment is generally inappropriate in employment discrimination cases because such cases involve nebulous questions of motivation and intent." In employment discrimination

5

cases, however, jurors are simply asked to determine whether an employer intentionally discriminated against the plaintiff on the basis of his race, sex or other protected characteristic, with no legal presumption tying their hands. In the bankruptcy estoppel context, by contrast, the Fifth Circuit's use of the "almost always" language, and the actual results of their decisions in bankruptcy estoppel cases, suggests that something approaching an absolute presumption of intent exists in cases where a debtor fails to disclose a tort lawsuit to a bankruptcy court. In arguing that this court should simply assign this issue to jurors, plaintiff ignores this fact.

It strikes this court that, in establishing such a strong presumption in favor of intent, the Fifth Circuit has recognized that, since neither courts nor jurors are mind readers, it will generally be impossible for any factfinder to determine what was going through a debtor's mind when he chose not to disclose a tort claim to a bankruptcy court. In light of this reality, it is incumbent upon appellate courts to make a policy decision regarding whether they will err on the side of encouraging prompt disclosure of tort claims or whether they will err on the side of not unduly punishing debtors who may have simply made an honest mistake in failing to do so. It seems inevitable that, whichever way an appellate court decides, it will, in fact, "err" in some cases, by either allowing unscrupulous debtors to get away with intentional non-disclosure of claims or by inferring intent on the part of a debtor where no such intent actually exists. As discussed below, federal appellate courts have made different evaluations of the policy considerations in this context, but it seems clear that, for better or worse, the Fifth Circuit has come down on the side of encouraging full disclosure of tort claims. Plaintiff's argument that this court should regard intent in the bankruptcy estoppel context as a "fifty-fifty" fact issue for jurors to decide ignores this fact.

6

Fifth Circuit precedent aside, this court believes that asking jurors to make findings regarding motivation would be particularly problematic in the bankruptcy estoppel context, since it would be asking non-attorneys to rule upon the motivations of attorneys and parties who themselves may have been motivated by complex considerations of legal strategy. In its initial order, this court emphasized the Fifth Circuit's statement that "[a] motivation to conceal may be shown by evidence of a potential financial benefit that could result from concealment." *U. S. ex rel. Long v. GSDMIdea City, LLC*, 798 F.3d 265, 273 (5th Cir. 2015). Clearly, determining whether or not a particular litigant stood to potentially benefit from a particular non-disclosure in his Chapter 13 filings often, if not inevitably, requires extensive knowledge of bankruptcy law, at least if this determination is to be made with any degree of reliability.

In its order, this court relied upon *In re Watts,* 2012 WL 3400820, at *8 (Bankr. S.D. Tex. Aug. 9, 2012), in which the Bankruptcy Court for the Southern District of Texas considered a plaintiff's arguments, virtually identical to those here, that since his bankruptcy plan provided for 100% repayment of claims without interest, he had no potential motivation to conceal his lawsuit. In rejecting this argument, the Bankruptcy Court emphasized that:

> The Plan provides for 100% repayment of all claims, but these claims are being paid out over five years, and the Plan does not provide for payment of interest on those claims. [Finding of Fact No. 5]. Had the Debtors disclosed the Claim prior to confirmation, both the Trustee and the creditors would have had the opportunity to object to the Plan on the grounds that the Claim, if successful, would generate enough funds to pay interest on claims; and that the Plan, as proposed, should not be confirmed, when it was not filed in good faith-i.e. the projected disposable income available for unsecured claims would be higher if the Debtors modified the Plan to include use of any proceeds generated from the Claim to pay interest on the creditors' claims under § 1329(a)(3). See § 1325(a)(3) ("... the court shall confirm a plan if—the plan has been proposed in good faith ..."). By failing to disclose the Claim, the Debtors obtained confirmation of the Plan without having to pay interest.

*Watts*, 2012 WL 3400820, at *8.

7

Without question, the bankruptcy judge in *Watts* made findings of law and fact which relied heavily upon his extensive knowledge and experience in applying bankruptcy law, and it seems likely that this will very often be the case in resolving these matters. This court therefore believes that bankruptcy judges are in a much better position to make findings in this regard than district judges, and it frankly believes that assigning these issues to laypersons on a jury would virtually guarantee unreliable results. In so stating, this court notes that plaintiff relies heavily upon affidavits from attorneys regarding the alleged lack of benefits of non-disclosure in this case, and it is unclear how he expects laypersons on a jury to reliably evaluate the credibility and accuracy of these attorney affidavits. Indeed, this court has cast a critical eye upon these attorney affidavits in its orders, but it has only been able to do so because it is itself an attorney and is thus able to recognize what it believes to be factual and legal weaknesses in those affidavits. Jurors, by contrast, would likely be forced to simply accept the representations in those affidavits at face value. Thus, while this court agrees with plaintiff that jurors are generally best suited to decide questions of motivation and intent, it believes that the present context presents a clear exception to this general rule. This court therefore submits that bankruptcy estoppel issues can most reliably be decided by judges rather than jurors, and it is difficult to discern a reasonable argument otherwise.

In assessing the most likely motivation of plaintiff's attorneys in this case, this court reiterates that plaintiff's own evidence, in the form of Emerson's affidavit, strongly suggests that their non-disclosure was intentional, albeit based upon a misunderstanding of the applicable law. Once again, Emerson contends that bankruptcy attorneys in the Eastern District of Arkansas are able to get away with delaying disclosure of tort claims for a lengthy period of time, which seems unsurprising considering the more lenient judicial estoppel standards which prevail in the

Eighth Circuit.  Nevertheless, Fifth Circuit law clearly controls the judicial estoppel issues in this case, and it seems likely that plaintiff's attorneys made an intentional decision not to disclose his tort claims based upon a misunderstanding of the applicable law.  Clearly, a conscious decision based upon a misunderstanding of the law remains a conscious one, and this court therefore believes that Emerson's affidavit undercuts plaintiff's own inadvertence arguments in this case.

     This court notes that, in his motion for rehearing, plaintiff offers open criticism of the Fifth Circuit's judicial estoppel jurisprudence, writing that "[t]he Fifth Circuit's relatively frequent application of the doctrine of judicial estoppel has begun to leave it somewhat isolated from its sister Circuits." [Brief at 22].  Plaintiff then proceeds to cite the judicial estoppel decision of more lenient circuits before arguing that "these other circuits' application of the doctrine of equitable estoppel are more in line with Supreme Court precedent than this Court's Order."  [Brief at 25].  In so arguing, plaintiff merely confirms that this court has correctly applied the Fifth Circuit's equitable estoppel jurisprudence in this case, harsh though it may be.  As a district court, this court has no power to change the Fifth Circuit's approach even if it wished to do so, and plaintiff should argue in favor of any change in the governing law on appeal, rather than before this court.

     While this court's agreement or disagreement with Fifth Circuit law is thus irrelevant, it does submit, for the record, that Emerson's affidavit, if accepted as accurate, offers tacit support for the Fifth Circuit's more stringent approach in this context.  In so stating, this court must wonder: if a bankruptcy debtor or his attorney is well aware of the existence of a tort claim (which clearly represents an asset of the bankruptcy estate) then what is the point in waiting months or years before disclosing it?  The existence of a valuable tort claim is clearly an important legal fact which is entirely relevant to the bankruptcy action, and it takes mere minutes

9

for an attorney to type up a notice which allows creditors to protect their interests and for the bankruptcy court to make fully informed rulings. That being the case, why should bankruptcy debtors or their attorneys be allowed to make a conscious decision to "sit on" this important information for a lengthy period of time when they consider it to be in their interests to do so?

In his brief, plaintiff attempts to characterize the non-disclosure issues in this case as involving a mere question of "timing," writing that:

> Plaintiff concedes that he has a duty to disclose his assets to bankruptcy. However, at the heart of the issue, is the *timing* of the disclosure. Notably, none of the cases that Defendant cited actually explain when disclosure is required. Ms. Emerson clarifies this issue for the Court. Per her affidavit, it is common for individuals in bankruptcy to disclose their post-petition claims prior to the settlement or resolution of the personal injury action. As this Court is well aware, this matter was still in the discovery stage of litigation.

[Reply brief at 6-7]. In addressing these arguments, this court notes at the outset that there is no way of knowing whether plaintiff *ever* would have disclosed his tort claim in this case to the bankruptcy court, had defendant not raised this issue first. This court is therefore unwilling to simply assume that plaintiff's Arkansas attorneys would have eventually disclosed it, when there is no way of knowing whether or not that is the case. That aside, plaintiff's urging that debtors be allowed to follow the alleged Arkansas practice of waiting for "the settlement or resolution of the personal injury action" makes clear that he is advocating a very long delay in disclosure indeed, since personal injury actions can take many months or years to resolve.

That brings this court to the fact that the bankruptcy process is, to a large extent, a "zero sum game," in which the debtor and creditors are each trying to obtain as large a share of the assets of the bankruptcy estate as possible. That being the case, it seems self-evident that, if a debtor concludes that it is to his *advantage*, in a particular case, to wait months or years to disclose a tort claim to the bankruptcy court, then that same delay tends to work to the

10

*disadvantage* of creditors, who lose valuable time to protect their legal rights. Clearly, the fact that the bankruptcy estate includes a valuable tort claim increases the potential "pot" of recovery and makes it more likely that it will be worth it to creditors to take steps to obtain as large a share of that pot as possible. Moreover, it is indisputable that things like hiring counsel to file and argue motions before bankruptcy courts takes time, and it is thus apparent that, in this context, time truly is money. That being the case, on what basis should the law permit debtors to keep the existence of a tort claim to themselves for months or years, rather than spending the minimal time and effort which is required to disclose it? None which this court can discern.

Considered in this context, the Arkansas approach described by Emerson strikes this court as a cautionary tale of sorts and an indication that lackadaisical enforcement of rules often leads to lackadaisical litigation practices. Plaintiff appears set to argue before the Fifth Circuit that it should be more like the Eighth Circuit as it relates to bankruptcy estoppel issues, but his own evidence regarding Arkansas disclosure practices casts serious doubt, at least in this court's mind, regarding whether the Eighth Circuit approach is something to which this circuit should aspire. This court submits that the Fifth Circuit approach is also supported by another important consideration, relating to the predictability of the law. In so stating, this court notes that, as harsh as the Fifth Circuit's judicial estoppel jurisprudence may be, it leaves debtors and their attorneys (who care to research the law beforehand) in little doubt regarding what they are required to do: promptly disclose any lawsuits which they may have to the bankruptcy court. In this case, by contrast, plaintiff appears to endorse a rather *ad hoc* judicial estoppel analysis, based upon ambiguous standards, whereby a plaintiff who submits the right affidavit from the right staff attorney, stating that "a lot of people" are doing something forbidden by Fifth Circuit law, will be let off with a warning.

In this vein, the competing approaches of the Fifth Circuit and the Eighth Circuit strike this court as being analogous to two different speeding enforcement standards adopted by two different towns. One town has adopted a "zero tolerance" standard whereby traffic police are instructed to ticket speeders, regardless of any attempts they may make to persuade the officer otherwise. Another town has adopted a more lenient process whereby traffic police have the discretion to consider any mitigating factors or pleas for mercy that the speeder sees fit to offer. The Eighth Circuit has apparently chosen the latter approach, and it is entirely unsurprising to learn from Emerson's affidavit that this approach has resulted in a situation where speeding is more prevalent in that circuit than in this one. The Fifth Circuit clearly foresaw this consequence of adopting more lenient standards, writing in a 2015 decision that "[a]llowing [a debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing personal assets only if he is caught concealing them." *U. S. ex rel. Long v. GSDMIdea City, LLC*, 798 F.3d 265, 273 n 6 (5th Cir. 2015).

While this court therefore regards the Fifth Circuit's approach as a quite defensible one, the crucial point in this context is that, in choosing to litigate a federal case in this circuit, plaintiff subjected himself to its rules, regardless of whether they are defensible or not. This court remains of the view that its dismissal of this action based upon judicial estoppel was the correct decision under Fifth Circuit law, and plaintiff's motion for reconsideration will therefore be denied.

In light of the foregoing, it is ordered that plaintiff's motion to reconsider is denied.

This, the 14th day of December, 2023.

/s/ Michael P. Mills
U.S. DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI