# United States Court of Appeals
# for the Fifth Circuit

---

No. 24-60025

---

United States Court of Appeals
Fifth Circuit

**FILED**

March 3, 2025

Lyle W. Cayce
Clerk

THOMAS KEATHLEY,

*Plaintiff—Appellant*,

*versus*

BUDDY AYERS CONSTRUCTION, INCORPORATED,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:21-CV-261

---

Before HIGGINBOTHAM, STEWART, and HAYNES, *Circuit Judges*.
PER CURIAM:[*]

    In August 2021, Thomas Keathley was involved in a motor vehicle collision with a driver employed by Buddy Ayers Construction, Inc. ("BAC"). As a result, Keathley filed this personal injury suit against BAC alleging claims of negligence and vicarious liability. BAC then moved for summary judgment on grounds of judicial estoppel because Keathley had failed to disclose his cause of action against BAC in his pending bankruptcy

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-60025

proceedings. The district court granted BAC's summary judgment motion and dismissed Keathley's lawsuit. Keathley moved for reconsideration of the district court's judgment and the district court denied his motion. Keathley now appeals the district court's summary judgment in favor of BAC dismissing his lawsuit on grounds of judicial estoppel. He also appeals the district court's denial of his motion for reconsideration. Because we conclude that the district court did not abuse its discretion in dismissing Keathley's lawsuit and in denying his motion for reconsideration, we AFFIRM.

## I. Factual & Procedural Background

On December 27, 2019, Keathley filed a Chapter 13 Voluntary Petition for Bankruptcy and a Chapter 13 Plan in the United States Bankruptcy Court for the Eastern District of Arkansas. A few months later in March 2020, Keathley filed an Amended Plan, and the bankruptcy court confirmed the plan in April 2020. According to the record and Keathley's deposition testimony, he had also previously filed for bankruptcy in 2001, 2003, and 2015.

On August 23, 2021, Keathley was involved in a motor vehicle collision with David Fowler in Alcorn, Mississippi. At the time of the collision, Fowler was employed as a truck driver for BAC. Keathley claimed that within hours of the collision he began experiencing pain in his back and neck and sought medical treatment. One day later, Keathley retained a personal injury attorney. Then on December 29, 2021, Keathley filed his personal injury lawsuit against BAC and Fowler in the United States District Court for the Northern District of Mississippi.[1] Although Keathley claims

---

[1] Keathley's personal injury lawsuit was filed in federal district court pursuant to 28 U.S.C. § 1332. Because the existence of diversity jurisdiction under § 1332 was not clear from the record when this case was originally submitted on appeal, this court issued a limited remand for the district court to make a determination as to whether diversity

that he informed his bankruptcy attorney, Bart Ziegenhorn, that he had filed a personal injury lawsuit, neither Keathley nor Ziegenhorn disclosed the personal injury cause of action to the bankruptcy court. Several months later on March 1, 2022, Keathley filed a Modified Chapter 13 Plan with the bankruptcy court, but again failed to disclose his personal injury lawsuit. On June 27, 2022, Keathley filed two additional Amended/Modified Plans with the bankruptcy court, and once again, failed to disclose his pending personal injury lawsuit. The bankruptcy court confirmed Keathley's Modified Plan on July 20, 2022.

In December 2022, Keathley filed his first amended complaint in the personal injury lawsuit against BAC, requesting additional damages but again, failed to advise the bankruptcy court of the personal injury lawsuit. On March 30, 2023, BAC moved for summary judgment on Keathley's personal injury claims on grounds of judicial estoppel.[2] In its motion, BAC argued that Keathley should be judicially estopped from pursuing his personal injury lawsuit due to his failure to notify the bankruptcy court of the pending cause of action. In support, BAC pointed to Keathley's continuing duty to disclose all assets to the bankruptcy court, which included all contingent and unliquidated claims. BAC argued that Keathley breached this duty by failing to disclose his personal injury lawsuit, even though he had filed to amend his Chapter 13 Plan at least three times after he filed his lawsuit against BAC.

Four days later, on April 4, 2023, Keathley filed an Amended Schedule notifying the bankruptcy court that he had a pending personal

_____

jurisdiction exists in this case. On remand, the district court determined that complete diversity exists among the parties herein, so we now proceed to the merits.

[2] Fowler also moved for summary judgment on Keathley's personal injury claims on grounds of judicial estoppel. On June 6, 2023, however, the parties stipulated to the dismissal with prejudice of Keathley's claims against Fowler.

injury lawsuit against BAC. On April 12, 2023, Keathley responded to BAC's motion for summary judgment. Then on April 14, 2023, Keathley filed a motion in the bankruptcy court seeking approval of a settlement that he had received in December 2022 for a workers' compensation claim that he filed after the August 2021 vehicle collision with BAC.

On August 8, 2023, the district court granted summary judgment in favor of BAC on grounds of judicial estoppel. In its order, the district court observed that, although Keathley "was aware of his cause of action in [the personal injury] case, . . . he nevertheless filed Second, Third and Fourth Amended Chapter 13 Bankruptcy Plans which failed to list this cause of action as an asset of his bankruptcy estate." The district court then concluded that, under controlling Fifth Circuit precedent, Keathley's failure to disclose his pending personal injury cause of action as an asset in the bankruptcy proceedings resulted in his being judicially estopped from proceeding with his lawsuit against BAC. The district court explained that it was bound by longstanding Fifth Circuit jurisprudence which had been developed to protect "the integrity of the bankruptcy process and the federal courts as a whole[.]" The district court further noted that this court's approach "give[s] clear warning to any debtors thinking of failing to disclose lawsuits [because] if their deception is discovered, they will not simply be allowed to plead an honest mistake and file an amended disclosure." The district court then issued a final judgment dismissing Keathley's lawsuit against BAC.

On September 9, 2023, pursuant to Rule 59(e), Keathley filed a "Motion to Alter or Amend Judgment" requesting that the district court reconsider its prior ruling and deny BAC's motion for summary judgment. *See* Fed. R. Civ. P. 59(e). In his motion, Keathley contended that "newly discovered evidence" demonstrated that judicial estoppel was not appropriate in his case. To that end, he attached the affidavit of Kellie

No. 24-60025

Emerson, a staff attorney for the office of the Chapter 13 Trustee for the Eastern and Western Districts of Arkansas. In her affidavit, Emerson stated that "there is nothing unusual or misleading about [Keathley] not disclosing [to the bankruptcy court] the personal injury action while the personal injury action is ongoing." She continued that "[i]n the Eastern District of Arkansas, it is not uncommon for debtors to amend their bankruptcy filings to disclose post-petition claims for personal injury actions prior to the settlement or resolution of the personal injury action." According to Keathley, Emerson's affidavit supported his "position that the non-disclosure of the personal injury claims was inadvertent."

On December 14, 2023, the district court issued an order denying Keathley's Rule 59(e) motion for reconsideration. In its order, the district court made two key observations. First, it noted that, as far as it could discern, Emerson's affidavit was not "newly discovered evidence" because nothing prevented Keathley from obtaining and submitting it prior to the district court issuing its ruling on BAC's summary judgment motion. As such, it determined that Emerson's affidavit failed to constitute a proper basis for a rehearing motion. The district court then proceeded to offer dicta rejecting Keathley's argument that Emerson's affidavit supported his position that his non-disclosure of his personal injury suit was "inadvertent." To the contrary, the district court reasoned that Emerson's affidavit, if true, suggested that "it is a common practice among bankruptcy attorneys in the Eastern District of Arkansas, presumably with full knowledge of what they are doing, not to list tort claims until shortly before they are settled or otherwise resolved." Consequently, the district court explained, "bankruptcy debtors in that district, acting through their attorneys, routinely make a conscious and intentional decision *not* to list tort claims which they know about until such time as those claims are close to being resolved." According to the district court, bringing this common practice to light

undermined, rather than supported, Keathley's position that his non-disclosure was inadvertent. If anything, the district court reasoned, Emerson's affidavit suggested that Keathley's non-disclosure may have been intentional which cut against him given "that a crucial factor in deciding judicial estoppel issues in the Fifth Circuit is whether a debtor can be inferred to have acted *intentionally* in failing to list a tort claim as an asset of the bankruptcy estate."

Keathley appealed the district court's summary judgment order and judgment dismissing his case, as well as its order denying his Rule 59(e) motion for reconsideration.

## II. STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). However, "because judicial estoppel is an equitable doctrine, and the decision whether to invoke it is within the court's discretion, we review for abuse of discretion the lower court's decision to invoke this doctrine." *Allen v. C & H Distrib., L.L.C.*, 813 F.3d 566, 572 (5th Cir. 2015) (cleaned up). We will conclude that "[a] district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *Id.* (citations omitted).

We also review a district court's denial of a Rule 59(e) motion to alter or amend a judgment for abuse of discretion. *See Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 184 (5th Cir. 2018). "However, if a party appeals from the denial of a Rule 59(e) motion that is solely a motion to reconsider a judgment on its merits, *de novo* review is appropriate." *Piazza's Seafood World, L.L.C. v. Odom*, 448 F.3d 744 749 (5th Cir. 2006). The applicable standard depends on whether the district court considered the "newly

discovered" materials attached to the motion. *See Templet v. HydroChem Inc.*, 367 F.3d 473, 477 (5th Cir. 2004). "If the materials were considered by the district court, and the district court still grants summary judgment, the appropriate appellate standard of review is *de novo.*" *Id.* "However, if the district court refuses to consider the materials, the reviewing court applies the abuse of discretion standard." *Id.* "Under this standard of review, the district court's decision and decision-making process need only be reasonable." *Id.*

## III. Discussion

Keathley raises a number of issues on appeal, many of which are encompassed in his broader argument that the district court abused its discretion in concluding that BAC was entitled to summary judgment on the basis of judicial estoppel. Keathley also contends that the district court abused its discretion in declining to consider Emerson's affidavit in his Rule 59(e) motion. Finally, he urges this court to reconsider its judicial estoppel jurisprudence and "bring it more in line with other [c]ircuits." We are unpersuaded.

### A. Judicial Estoppel

We first address Keathley's argument that the district court abused its discretion in granting summary judgment in favor of BAC on grounds of judicial estoppel. In support of his position, he contends that the district court "made errors of law and misapplied the law to the facts by failing to conduct a specific fact-based inquiry into whether the elements of judicial estoppel had been met and instead applying judicial estoppel as an inflexible *per se* rule." He further argues that he submitted evidence to the trial court establishing that his failure to disclose his personal injury claim to the bankruptcy court was inadvertent and in good faith which "create[d] a genuine factual dispute on the question of inadvertence such that summary

judgment was inappropriate." He also asserts that the facts of his case are distinguishable from prior Fifth Circuit caselaw applying judicial estoppel and thus summary judgment in favor of BAC was improper in this case. We disagree in all respects.

"Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation." *Allen*, 813 F.3d at 572 (citations omitted). The purpose of the doctrine "is to protect the integrity of the judicial process, by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *Id.* (cleaned up). "Judicial estoppel has three elements: (1) The party against whom it is sought has asserted a legal position that is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Id.* (citation omitted).

"[T]he integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012) (internal quotation marks and citation omitted). For this reason, "the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims." *Id.* (alteration omitted); *see* 11 U.S.C. § 521(1). "The obligation to disclose pending and unliquidated claims in bankruptcy proceedings is an ongoing one." *Id.* Relevant here, "[t]he disclosure requirement pertains to potential causes of action as well." *Id.*

"[J]udicial estoppel is not governed by inflexible prerequisites or an exhaustive formula for determining its applicability, and numerous considerations may inform the doctrine's application in specific factual contexts." *Id.* (cleaned up). Nevertheless, "[t]his court has noted that judicial estoppel is particularly appropriate where a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal

based on that undisclosed asset." *Id*. at 261–62 (cleaned up). Still, "[j]udicial estoppel will not apply if the non-moving party's failure to disclose was inadvertent, meaning that he did not know of his inconsistent position or had no motive to conceal it from the court." *United States ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 766 F. App'x 38, 43 (5th Cir. 2019) (unpublished) (citing *Jethroe v. Omnova Sols., Inc.*, 412 F.3d 598, 601 (5th Cir. 2005)). "Whether a debtor's failure to disclose claims was inadvertent presents a question of fact." *Love*, 677 F.3d at 262 (citation omitted).

We now turn to the first two elements of judicial estoppel: (1) whether Keathley has "asserted a legal position that is plainly inconsistent with a prior position"; and (2) whether the bankruptcy court "accepted the prior position[.]" *Allen*, 813 F.3d at 572. Keathley argues that he did not take a position in his bankruptcy proceedings that was inconsistent with his personal injury claims against BAC because (1) his personal injury suit was not pending at the time he originally filed his Chapter 13 Petition with the bankruptcy court and (2) none of the Amended Chapter 13 Plans that he submitted after his personal injury lawsuit was pending contained any statements regarding his assets. He further argues that "[g]iven that no such inconsistent positions were taken, it would be impossible for the bankruptcy court to have accepted any inconsistent positions." His arguments, however, do not withstand the controlling law of this circuit.

As this court has consistently held, "the law on disclosure [is] well settled: Chapter 13 debtors have a continuing obligation to disclose post-petition causes of action." *In re Flugence*, 738 F.3d 126, 129 (5th Cir. 2013) (citing *In re Coastal Plains, Inc.*, 179 F.3d 197, 207–08 (5th Cir. 1999) ("The duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action."); *Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.)*, 374 F.3d 330, 335 (5th Cir. 2004) ("The duty to disclose is continuous.");

*Jethroe*, 412 F.3d at 600 ("The obligation to disclose pending and unliquidated claims in bankruptcy proceedings is an ongoing one."); *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 384–85 (5th Cir. 2008) ("Pursuant to the Bankruptcy Code, debtors are under a continuing duty to disclose all pending and potential claims.")). Thus, it makes no difference that Keathley's personal injury lawsuit was not pending at the time he initially filed his Chapter 13 Petition with the bankruptcy court because the duty of disclosure is a continuing one. *See id.* As the record reflects, he filed three Amended/Modified Chapter 13 Plans with the bankruptcy court *after* he filed his personal injury lawsuit against BAC. Accordingly, even if Keathley failed to notify the bankruptcy court of his personal injury suit when he initially filed it, each of these post-petition filings represented another opportunity for him to make the disclosure. Yet he chose not to disclose his cause of action not only when he originally filed it, but also three additional times thereafter. Because Keathley "had an affirmative duty to disclose [his] personal-injury claim to the bankruptcy court and did not do so, [he] impliedly represented that [he] had no such claim." *In re Flugence*, 738 F.3d at 130. His position, therefore, was "plainly inconsistent" with his later assertion of his personal injury claims in his lawsuit against BAC. *Id.*

Further, the bankruptcy court confirmed Keathley's Amended Plan. It thus accepted his prior position of having no pending personal injury cause of action "by omitting any reference to [Keathley's] personal-injury claim in the modified plan." *Id.* "Had the [bankruptcy] court been aware of [his] claim, it may well have altered the plan." *Id.*; *see also Tangipahoa Par. Sch. Bd.*, 766 F. App'x at 42 ("This continuing obligation exists because the inclusion of assets in the bankruptcy estate is often a contested issue, and the debtor's duty to disclose assets—even where he has a colorable theory for why those assets should be shielded from creditors—allows that issue to be decided as part of the orderly bankruptcy process.") (internal quotation

marks omitted) (citing *Allen*, 813 F.3d at 572 (quoting *Flugence*, 738 F.3d at 130)). Thus, we conclude here—as we have before on nearly identical facts—that "the first two elements of judicial estoppel apply." *Id.*

Finally, we turn to the third element of judicial estoppel: whether Keathley's failure to disclose his personal injury lawsuit to the bankruptcy court was inadvertent. *See Allen*, 813 F.3d at 572. As we have stated, "in considering judicial estoppel for bankruptcy cases, the debtor's failure to satisfy its statutory disclosure duty is inadvertent only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *In re Coastal Plains, Inc.*, 179 F.3d at 210 (internal quotation marks and citations omitted). Although Keathley does not argue that he had no knowledge of his personal injury lawsuit against BAC, he contends that he had no motive to conceal his claims from the bankruptcy court because he did not realize he had a duty to disclose them. In support, he cites to Emerson's affidavit, contending that it "it offers evidence that [his] non-disclosure was not unusual and is, in fact, routine in the Eastern District of Arkansas."

As an initial matter, this court has held that "the controlling inquiry, with respect to inadvertence, is the knowing of facts giving rise to inconsistent positions." *In re Flugence*, 738 F.3d at 130–31 ("[A] [party's] lack of awareness of a statutory disclosure duty for [ ] legal claims is not relevant."). We thus reject as meritless Keathley's argument that he did not realize he had a duty to disclose his personal injury cause of action to the bankruptcy court. *Id.* Moreover, as Keathley conceded in his deposition testimony, this is his fourth time to file for bankruptcy. We are thus hard pressed to accept his representation that he was unaware that he had a continuing duty to disclose his personal injury cause of action given his familiarity with the bankruptcy process.

No. 24-60025

Additionally, with respect to Keathley's contentions regarding Emerson's affidavit, we agree with both the district court and BAC that the affidavit, if anything, cuts against Keathley's argument that his nondisclosure was inadvertent. Pointing out that "non-disclosure was not unusual and is, in fact, routine in the Eastern District of Arkansas," suggests that Keathley's nondisclosure was actually intentional—not inadvertent as he claims.

We are further unpersuaded by Keathley's argument that Emerson's affidavit demonstrates his lack of motive for concealment "by establishing that the non-disclosure of the personal injury case was completely inconsequential to the administration of the bankruptcy [because he] stood to gain nothing, and has gained nothing, by the non-disclosure." As the district court pointed out, under the terms of his Chapter 13 Plan, Keathley has an interest-free repayment plan which is spread over five years. And as the record indicates, Keathley has filed multiple times to have his interest-free repayment plan extended. If he had disclosed his personal injury claims to the bankruptcy court, his creditors would have had an opportunity to object to his interest-free plan on grounds that his personal injury suit, if successful, would have generated enough revenue to cover the interest he owed on his debts. *See In re Watts*, 2012 WL 3400820, at *8 (Bankr. S.D. Tex. Aug. 9, 2012). Thus, we agree with the district court that Keathley stood to potentially benefit by concealing his personal injury case from the bankruptcy court. Additionally, as this court has made clear, "the motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court"—as Keathley has failed to do in this case. *Love*, 677 F.3d at 262. For these reasons, we conclude that the third element of judicial estoppel applies because Keathley cannot show that his failure to disclose his personal injury lawsuit was inadvertent. *In re Coastal Plains, Inc.*, 179 F.3d at 210.

In sum, we hold that the district court did not abuse its discretion in granting summary judgment in favor of BAC on grounds of judicial estoppel. *See Allen*, 813 F.3d at 572.

### B. Rule 59(e) Motion

Keathley further argues that the trial court abused its discretion in denying his Rule 59(e) motion. Specifically, he argues that the district court erred in failing to consider Emerson's affidavit because the facts contained therein "demonstrate that none of the elements of judicial estoppel have been established." Again, we disagree.

"A Rule 59(e) motion calls into question the correctness of a judgment." *Templet*, 367 F.3d at 478 (internal quotation marks and citation omitted); *see also* FED. R CIV. P. 59(e). As this court has consistently held, "such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id*. at 478–79 (citation omitted). "Rather, Rule 59(e) serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id*. at 479 (cleaned up). We have further acknowledged that "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Id*. (citation omitted).

As a preliminary matter, we note that our review of the district court's judgment denying Keathley's Rule 59(e) motion is for abuse of discretion because the district court refused to consider the "newly discovered evidence" that Keathley sought to admit in support of his motion, *i.e.*, Emerson's affidavit. *Id*. at 477. We therefore only need to decide if "the district court's decision and decision-making process" were "reasonable." *Id*.

No. 24-60025

According to Keathley, Emerson's affidavit was not available to him or his counsel before he responded to BAC's summary judgment motion because he only had fourteen days to respond. In support, he claims that acquiring Emerson's affidavit "was not a simple task" because it required "[c]ontacting [] Emerson, securing approval from her supervisors for her cooperation, consulting with her to discover what information she possessed, the preparation and revision of an [a]ffidavit, and several rounds of review of the [a]ffidavit by [] Emerson and her supervisor" all of which "took a substantial amount of time and effort." But as the district court recognized, Emerson's affidavit was not "newly discovered evidence" just because it was difficult for Keathley to obtain it. As Emerson's affidavit explains, she is employed as a staff attorney for the office of the Chapter 13 Trustee for the Eastern and Western Districts of Arkansas and she is personally assigned to Keathley's bankruptcy case. She further states that "[t]hroughout the duration of their bankruptcy, [she] ha[s] communicated with Mr. and Mrs. Keathley directly and through their attorney, Bart Ziegenhorn."

Assuming Emerson's affidavit is accurate, she and Keathley have been in contact both directly and indirectly "throughout the duration of [Keathley's] bankruptcy" which he filed on December 27, 2019, and had been pending for at least two years before Keathley filed his personal injury lawsuit against BAC in December 2021. Accordingly, Keathley had been aware of Emerson's "specialized knowledge of the customs and practices of bankruptcy courts" in the Eastern District of Arkansas for nearly four years before he moved for reconsideration in September 2023 on grounds that this information was "newly discovered evidence." And as BAC points out on appeal, if this was not enough time to obtain Emerson's affidavit, Keathley could have moved for additional time to respond to BAC's summary judgment motion as he had done before during the pendency of the proceedings. He could have also moved to supplement his response to BAC's

motion between March and August 2023, when BAC's summary judgment motion was pending before the district court. But Keathley did none of this. We therefore reject his arguments as too little and too late.

As the district court explained, its "rulings are not an invitation for an ongoing dialogue with the parties; to the contrary, both sides are obligated to collect and present whatever evidence they feel is relevant *before* [the district] court has issued its ruling." Moreover, as we have stated herein *supra*, we agree with the district court that, had it considered Emerson's affidavit, it would have only undermined Keathley's position that his nondisclosure was inadvertent. This is because the affidavit for the most part merely explains that the usual practice in the Eastern District of Arkansas is not to disclose pending personal injury lawsuits to the bankruptcy courts until shortly before they are resolved or settled. This suggests that Keathley's failure to disclose his personal injury cause of action to the bankruptcy court was likely intentional, not inadvertent, which further supports the district court's application of judicial estoppel in this case.

For these reasons, we hold that the district court did not abuse its discretion in denying Keathley's Rule 59(e) motion on grounds that Emerson's affidavit was not "newly discovered evidence" and thus not a proper basis for a rehearing motion. *Templet*, 367 F.3d at 478–79.

### C. Fifth Circuit Jurisprudence

Finally, in his brief on appeal Keathley engages in a lengthy discussion about the evolution, history, purpose, and general application of this court's judicial estoppel jurisprudence. He further requests that we reconsider our judicial estoppel jurisprudence and "bring it more in line with other [c]ircuits." In other words, he urges us to take a more lenient approach in our application of judicial estoppel so that he can obtain a more favorable outcome in these proceedings. Given our holding herein, however, it is

unnecessary for us to address Keathley's arguments on this issue. And even if we did, we would still reject them because we are bound by the rule of orderliness to apply the applicable, controlling caselaw in this circuit. *See United States v. Traxler*, 764 F.3d 486, 489 (5th Cir. 2014) (internal citations and quotation marks omitted) ("It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our en banc court." (citation omitted)). Indeed, even Keathley concedes on appeal that he "is unaware of any Fifth Circuit opinion allowing a plaintiff's claim to survive a challenge under judicial estoppel when there is an issue of non-disclosure to a bankruptcy court." We are thus bound by the law in this circuit as it currently exists and reject Keathley's invitation to circumvent our longstanding precedent to achieve an outcome in his favor.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the district court's judgment dismissing Keathley's lawsuit against BAC, as well as its order granting summary judgment in favor of BAC on grounds of judicial estoppel. We also AFFIRM the district court's order denying Keathley's Rule 59(e) motion.

No. 24-60025

HAYNES, *Circuit Judge*, concurring in the judgment:

I concur in the judgment only because it is based upon our precedent. *See, e.g.*, *United States ex rel. Long v. GSDMidea City, LLC*, 798 F.3d 265, 270 (5th Cir. 2015). However, I respectfully disagree with our precedent in cases like the present. Although Keathley's bankruptcy case was ongoing, it was the district court that determined he should be judicially estopped from proceeding with his unrelated personal injury claim. In a situation like this one, where the personal injury lawsuit was filed in a different district (and even a different circuit) and involves a defendant unrelated to the ongoing bankruptcy proceedings, I believe it best to defer to the bankruptcy court's evaluation regarding whether the plaintiff should be allowed to proceed.[1]

"[W]e apply judicial estoppel against the backdrop of the bankruptcy system and the ends it seeks to achieve." *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc) (internal quotation marks and citation omitted). The doctrine aims to "deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system," while "protecting the rights of creditors to an equitable distribution of the assets of the debtor's estate." *Id.* At its core, judicial estoppel is equitable in nature. It focuses on whether a party's change in position "would adversely affect the proceeding or constitute a fraud on the court." *Judicial Estoppel*, BLACK'S LAW DICTIONARY (12th ed. 2024); *see New Hampshire v. Maine,* 532 U.S. 742, 750 (2001) ("Judicial estoppel is

---

[1] *See Fluence v. Axis Surplus Ins.* (*In re Fluence*), 738 F.3d 126, 132 (5th Cir. 2013) (Dennis, J., concurring) ("[W]hether judicial estoppel is invoked and, if so, what is the remedy crafted may differ. The bankruptcy court, *which is closest to the facts*, operates in a zone of discretion in crafting the appropriate remedy." (emphasis added) (citation omitted)).

a doctrine intended to prevent the perversion of the judicial process." (quotation omitted)).

In this instance, I doubt that the goals of the doctrine have been advanced. Here, there was evidence that Keathley's failure to disclose the personal injury claim on his bankruptcy schedules was an honest mistake. He also asserted (and the bankruptcy trustee agreed) that the delay in disclosing his lawsuit was of little concern to the bankruptcy court and would not impact Keathley's creditors. Nevertheless, the defendant, who was totally unrelated to the bankruptcy, moved for summary judgment. Without citing to any evidence of an actual financial benefit that Keathley experienced, the defendant argued that his motive for concealment was "self-evident under Fifth Circuit precedent." This hypothetical motive was enough; the district court granted the motion, citing this circuit's "stringent application of the judicial estoppel rules."

Although the district court faithfully applied our precedents and determined that the plaintiff had a possible financial motive for the nondisclosure, I have a concern that district courts, especially those sitting in a different circuit from the bankruptcy court, are not in the best position to evaluate the impact of precluding suit when the bankruptcy court itself has not weighed in on the situation.

In fact, preventing Keathley's personal injury action might undermine the judicial system the doctrine claims to protect. The defendant here is in no way impacted by the delay in disclosure to the bankruptcy court. Yet, assuming arguendo it is responsible for the car crash,[2] it receives an unwarranted windfall: it will owe nothing for its tort. Even further, Keathley

---

[2] The defendant before us is the employer of the person who, while working, caused the car crash. Thus, this defendant has potential vicarious liability.

is currently repaying his debts to his creditors in full (albeit, over time). If he receives no remedy for his injuries, it could harmfully impact his creditors' chance of recovery.

Other circuits take a more holistic approach than ours, suggesting that judicial estoppel is inappropriate when the bankruptcy proceedings will not suffer and when the alleged bad actors will receive a windfall. *See, e.g.*, *Slater v. United States Steel Corp.*, 871 F.3d 1174 (11th Cir. 2017) (en banc); *Botelho v. Buscone (In re Buscone)*, 61 F.4th 10 (1st Cir. 2023); *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542 (7th Cir. 2014); *Ah Quin v. County of Kauai Department of Transportation*, 733 F.3d 267 (9th Cir. 2013).

At bottom, the doctrine of judicial estoppel exists to "protect the integrity of the judicial process, by prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self-interest." *Allen v. C & H Distribs., LLC*, 813 F.3d 566, 572 (5th Cir. 2015) (alteration in original) (internal quotation marks and citation omitted). It is not a tool in the arsenal of potentially bad actors to reap a windfall. To me, it makes little sense for the defendant here to benefit from something it has no involvement in and for which the bankruptcy court does not appear to think the plaintiff should be sanctioned. In situations like this one—where the district court is in a different district and the case is still pending in bankruptcy court—I think the district court should defer to the bankruptcy court on whether a sanction is appropriate and, if so, whether it should be in the form of judicial estoppel benefiting a completely unaffected defendant.[3]

_____

[3] Some other options: The bankruptcy court might wish to fine the debtor or grant additional benefits to the bankruptcy creditors. Regardless, the sanction inquiry should belong to the bankruptcy court.

No. 24-60025

Thus, while I concur in the judgment in light of our precedent, I disagree with this outcome and would have dissented if we did not have prior precedents.