**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**THOMAS KEATHLEY**                                                    **PLAINTIFF**

**V.**                                                                          **NO. 3:21CV261 M-P**

**BUDDY AYERS CONSTRUCTION, INC.**                            **DEFENDANT**

**<u>ORDER</u>**

This cause comes before the court on its own motion, making certain observations and setting case management guidelines following the U.S. Supreme Court's ruling on the judicial estoppel issues in this case. In its June 11, 2026 decision in *Keathley v. Buddy Ayers Constr., Inc.,* 146 S. Ct. 1532 (2026), the Supreme Court overruled the Fifth Circuit judicial estoppel precedent upon which this court had relied in granting defendant's motion for summary judgment in this case. Following this decision, the Supreme Court remanded this case to the Fifth Circuit for additional proceedings, and that court chose to remand this case to this court with no additional findings or clarifications on its part. In doing so, the Fifth Circuit wrote that "[t]his matter is REMANDED in its entirety to the district court in accordance with the judgment of the Supreme Court" and added that "[w]e express no view as to what proceedings the district court should conduct on remand or what decisions it should make." [Fifth Circuit's July 16, 2026 order at 2].

In deciding how it should proceed in this regard, this court will begin with an analysis of the Supreme Court's ruling. In its opinion, the Supreme Court "assum[ed] without deciding" that "judicial estoppel can apply in the bankruptcy context" and "that 'inadvertence or mistake'

can function as an exception to that application." *Keathley*, 146 S. Ct. at 1539. Specifically, the Supreme Court wrote that:

> While this Court has never applied judicial estoppel in the bankruptcy context, in a different context we left open whether it "may be appropriate to resist application of judicial estoppel" when the party's prior inconsistent position was due to "inadvertence or mistake." *New Hampshire*, 532 U.S., at 753, 121 S.Ct. 1808. For purposes of this opinion, we assume without deciding that judicial estoppel can apply in the bankruptcy context and that "inadvertence or mistake" can function as an exception to that application.

*Id.*

In the court's view, it should be emphasized that the Supreme Court "assumed" that "inadvertence or mistake" can function as "an" exception to the application of judicial estoppel, but at no point did it suggest that this is the *only* exception which should be applied in this context. Indeed, by "assuming" rather than "deciding" that judicial estoppel "can" apply in the bankruptcy context, the Supreme Court appeared to stop short of actually *requiring* circuit courts to apply the doctrine in the bankruptcy context at all. This court submits that, if circuit courts are not required to apply judicial estoppel in the bankruptcy context at all, then they likely have very extensive discretion to recognize whatever exceptions to the doctrine which they regard as appropriate. This fact, and the fact that "inadvertence or mistake" are quite vague terms which can be given multiple meanings and applications by different courts, suggests to this court that, while the Supreme Court's opinion in this case establishes certain minimum standards for applying judicial estoppel in the bankruptcy context, the various federal circuits will still retain considerable discretion regarding the specifics of circuit law in this context.

In its opinion, the Supreme Court made it clear that the Fifth Circuit rule which had governed this case did not meet even the minimal standards for applying judicial estoppel. In

criticizing and abrogating the two-part test which has long formed the Fifth Circuit's judicial

estoppel standard in the bankruptcy context, the Supreme Court wrote that:

> Operating under those assumptions, the Fifth Circuit's understanding of "inadvertence or mistake" is simultaneously too rigid and too broad. The rigidity comes from the Fifth Circuit's failure to fully recognize that "judicial estoppel is an equitable doctrine." *Id.*, at 750, 121 S.Ct. 1808 (internal quotation marks omitted). As such, its "examination must be made in the light of the recognized principles of equity." *United States Nat. Bank v. Chase Nat. Bank*, 331 U.S. 28, 36, 67 S.Ct. 1041, 91 L.Ed. 1320 (1947). Equity, we have said, "eschews mechanical rules; it depends on flexibility." *Holmberg v. Armbrecht*, 327 U.S. 392, 396, 66 S.Ct. 582, 90 L.Ed. 743 (1946). Thus, when a court conducts an equitable inquiry, it must act "on a case-by-case basis," considering all relevant facts and circumstances. *Holland v. Florida*, 560 U.S. 631, 649–650, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010) (internal quotation marks omitted). In other words, equitable doctrines require room to consider all of the particulars.
> By contrast, the Fifth Circuit's rule allows courts to consider only two circumstances when assessing inadvertence or mistake: whether the debtor knew of the underlying facts of the claim, and whether there was a potential motive to conceal the claim. See *In re Coastal Plains, Inc.*, 179 F.3d 197, 210 (CA5 1999);  And under this rule, a court may not look at any other evidence tending to show that the omission was inadvertent. That rigidity is out of step with equity. To determine whether the omission was inadvertent or a mistake, the Fifth Circuit instead should have examined the totality of the circumstances surrounding Keathley's failure to report his personal-injury claims earlier. See, *e.g.*, *Ah Quin*, 733 F.3d at 276 ("[R]ather than applying a presumption of deceit, judicial estoppel requires an inquiry into whether the plaintiff 's bankruptcy filing was, *in fact*, inadvertent or mistaken, as those terms are commonly understood." (emphasis added and deleted)).

*Id.* at 1539–40.

In its opinion, the Supreme Court appeared to confirm this court's previously-stated

observations regarding the categorical nature of the two-part test which it was required to apply

in this case.  Specifically, the Supreme Court wrote that:

> In essence, then, the Fifth Circuit's approach is a one-size-fits-all test that requires courts to view as purposeful nearly every bankruptcy omission. Indeed, the decision below acknowledged as much, noting that, under Fifth Circuit precedent, the potential-motive element " 'is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court.' " *Keathley v. Buddy Ayers Constr., Inc.,* 2025 WL 673434, at *5 (5th Cir. Mar. 3, 2025), quoting *Love v. Tyson Foods, Inc*, 677 F.3d 258, 262 (5th Cir. 2012).

> The overbreadth of the Fifth Circuit's rule (the fact that it almost always is satisfied) makes it patently incompatible with an inadvertence-or-mistake standard, which suggests that circumstances—and outcomes—may vary. A near-dispositive criterion is a poor fit for a fair inquiry into whether an omission is *actually* the result of inadvertence or mistake.

*Id.* at 1540. The Supreme Court thus quoted the Fifth Circuit's own observation in *Love v. Tyson Foods, Inc.* that circuit precedent "almost always" requires a finding of judicial estoppel in cases where a debtor fails to disclose a claim, and the Supreme Court did not even offer a hint that there might be something about the facts of this case which allowed it to fall within the "almost" category.

The Supreme Court's evaluation of the extremely narrow discretion given to district courts in this regard tracks this court's own previously-stated observation that, while it appeared that plaintiff had legitimate policy and equitable arguments to make, these arguments were forestalled by Fifth Circuit precedent which this court was required to follow. Specifically, this court wrote in its order granting defendant summary judgment that:

> It strikes this court that, when confronted with this scenario, there are two approaches which a court might legitimately take in considering any judicial estoppel arguments. In the absence of proof of an intent to deceive, the first legitimate approach would be to give the plaintiff the benefit of the doubt and to allow him to submit amended bankruptcy filings, based partly upon the belief that it would be better for the bankruptcy creditors to be paid from the eventual proceeds of the lawsuit than to dismiss the action outright. The second legitimate approach would be to view this scenario from the perspective of protecting the integrity of the bankruptcy process and the federal courts as a whole and, accordingly, to give clear warning to any debtors thinking of failing to disclose lawsuits that, if their deception is discovered, they will not simply be allowed to plead an honest mistake and file an amended disclosure.
>
> It is irrelevant which of these two approaches this court would prefer, since the Fifth Circuit has clearly opted for the second one. Indeed, this court is struck by the fact that, in its briefing in this case, defendant is able to counter every argument from plaintiff with a Fifth Circuit decision rejecting a similar argument by a debtor/plaintiff. Plaintiff, by contrast, offers this court nothing more than state court decisions or other non-binding authority, and the decisions he cites are generally based on a very different weighing of the competing policy considerations in this context than those made by the Fifth Circuit. As a district court sitting in the Fifth Circuit, this rather glaring disparity in the parties'

4

citations to authority cannot help but have a very significant impact upon its resolution of this motion for summary judgment.

*Keathley v. Buddy Ayers Constr., Inc.,* 686 F. Supp. 3d 495, 496 (N.D. Miss. 2023).

In its opinion, this court noted multiple equitable downsides to the application of judicial estoppel in the bankruptcy context. For example, as quoted above, this court noted that declining to apply judicial estoppel in bankruptcy cases would allow "bankruptcy creditors to be paid from the eventual proceeds of the lawsuit" and thus advance the bankruptcy policy of ensuring that, to the extent possible, such creditors are paid. *Id.* Moreover, this court wrote that application of judicial estoppel might well allow civil defendants to obtain an "undeserved windfall" based on a plaintiff's "honest mistake." Specifically, this court wrote that:

> [P]laintiff does, in fact, have a reasonable argument that a stringent application of the judicial estoppel rules would result in cases where plaintiffs who did, in fact, make an "honest mistake" will see their tort claims disappear. It further seems clear that, in such cases, tort defendants may obtain an undeserved windfall.

*Keathley v. Buddy Ayers Constr., Inc.*, 686 F. Supp. 3d 495, 499 (N.D. Miss. 2023). As discussed below, Fifth Circuit Judge Catharina Haynes raised these same equitable concerns in her concurring opinion in this case, but she concluded, as this court did, that Fifth Circuit precedent did not allow her to apply these concerns here. *Keathley v. Ayers*, 2025 WL 673434, at *8–9 (Haynes concurring).

In describing how its hands were bound in this context, this court wrote that that:

> [The Fifth Circuit's] stringent approach will, no doubt, result in many debtors who did, in fact, make an honest mistake being barred from pursuing potentially meritorious tort claims. It is unclear to this court whether the plaintiff in this case falls in this category, but, if so, then this is a regrettable yet unavoidable result of the policy decision which the Fifth Circuit was forced to make. This court is bound to follow the Fifth Circuit's decisions in this context, and it accordingly finds that defendant's motion for summary judgment on the basis of judicial estoppel is well-taken and should be granted.

*Keathley*, 686 F. Supp. 3d at 495.  In denying plaintiff's motion for rehearing, this court reiterated that, regardless whether the Fifth Circuit's two-part test had merit or not, it was bound to apply it:

> This court notes that, in his motion for rehearing, plaintiff offers open criticism of the Fifth Circuit's judicial estoppel jurisprudence, writing that "[t]he Fifth Circuit's relatively frequent application of the doctrine of judicial estoppel has begun to leave it somewhat isolated from its sister Circuits." [Brief at 22]. Plaintiff then proceeds to cite the judicial estoppel decisions of more lenient circuits before arguing that "these other circuits' application of the doctrine of equitable estoppel are more in line with Supreme Court precedent than this Court's Order." [Brief at 25]. In so arguing, plaintiff merely confirms that this court has correctly applied the Fifth Circuit's equitable estoppel jurisprudence in this case, harsh though it may be. As a district court, this court has no power to change the Fifth Circuit's approach even if it wished to do so, and plaintiff should argue in favor of any change in the governing law on appeal, rather than before this court.

*Keathley v. Buddy Ayers Constr., Inc.,* 706 F. Supp. 3d 628, 634 (N.D. Miss. 2023).

As quoted above, this court wrote that plaintiff's arguments for the creation of new law in this context were appropriately made on appeal, and it is a testament to plaintiff's perseverance (and that of his counsel) that he pursued his arguments all the way to the U.S. Supreme Court and obtained a favorable ruling.  While plaintiff is to be congratulated on his appellate victory, this court does not read the Supreme Court's holding in this case as representing quite as pro-plaintiff an approach as the one for which he had advocated in his arguments before this court. In his prior arguments in this case, plaintiff sought for this court to endorse a position (in blatant contradiction to the then-existing Fifth Circuit precedent) which gave plaintiffs wide discretion regarding the "timing" of any disclosure of claims, including by permitting them to wait months or even years until a civil claim was near settlement to disclose its existence to bankruptcy creditors.  [Docket entry 176 at 7].

Nothing in the Supreme Court's opinion in this case supports the granting of such wide discretion to plaintiffs to slow-walk the disclosure process, and the Court's recognition that

6

judicial estoppel may validly be applied in cases where the failure to disclose was neither "inadvertent" nor a "mistake" suggests that there will be a large number of cases where a plaintiff is, in fact, required to provide timely notice of a claim, on pain of a finding of judicial estoppel. Thus, while plaintiff did obtain a significant victory before the Supreme Court, it was not as clear-cut a win as the one which he had sought. This court personally believes that the Supreme Court arrived at a reasonable middle ground in this case which permits federal courts to incentivize the timely disclosure of claims in bankruptcy through the application of judicial estoppel, but which tempers the harshness of this approach by requiring the recognition of equitable exceptions in cases of "inadvertence," "mistake" or, most likely, other contexts as well in which equity so requires.

Having provided its best understanding of the Supreme Court's ruling in this case, this court now turns to its application on remand. As noted previously, the Supreme Court's opinion provides rather vague guidelines which, it seems likely, will leave the various federal circuits considerable discretion to decide how stringent or lenient an approach they wish to adopt in the judicial estoppel context. While this degree of discretion is clearly much less than existed before the Supreme Court's decision, it appears to still exist to a significant extent. Moreover, in remanding the case to this court, the Fifth Circuit chose not to provide this court with any clarification of its views regarding the current state of circuit precedent in light of the Supreme Court's decision. This leaves this court to essentially guess what positions the Fifth Circuit will choose to stake out in this context, which is clearly a less-than-ideal situation. Nevertheless, this is the task which has been given to this court, and it will accordingly make its best effort to carry it out.

In attempting to predict future circuit precedent in this regard, this court doubts that the same Fifth Circuit which followed the near-categorical approach to judicial estoppel which previously prevailed in this circuit will whipsaw into staking out as liberal a position as some circuits have done. It seems considerably more likely to this court that the Fifth Circuit will alter its approach only to the extent required by the Supreme Court's ruling in this case. In this vein, it seems clear that the Supreme Court's opinion requires the Fifth Circuit, at a minimum, to recognize at least *some* equitable exceptions, based on the "totality of the circumstances," in which a plaintiff's non-disclosure of a claim may be excused based on "inadvertence" or "mistake."

In deciding what impact such considerations might have in this circuit, this court believes that the most helpful potential guidance lies in Judge Haynes' concurring opinion in this case. In its opinion, the Supreme Court appeared to cite Judge Haynes' concurrence with approval, noting that:

> The Fifth Circuit affirmed, relying on the same precedent as the District Court. 2025 WL 673434 (Mar. 3, 2025) (*per curiam*). Judge Haynes concurred based on her agreement that Fifth Circuit precedent dictated this outcome. But she expressed "doubt that the goals" of judicial estoppel were advanced by its application to Keathley's claims, given her view that there was evidence his omission was, in fact, an "honest mistake." *Id*., at *8. Judge Haynes further noted that "[o]ther circuits take a more holistic approach than" the Fifth Circuit does when assessing the application of judicial estoppel in the bankruptcy context.

*Keathley,* 146 S. Ct. at 1538. It appears to this court that the Supreme Court regards Judge Haynes' concurrence with some favor, since the equity-based "totality of the circumstances" test which it adopted tracks the approach which she advocated in her concurring opinion. Specifically, Judge Haynes wrote that:

> Although the district court faithfully applied our precedents and determined that the plaintiff had a possible financial motive for the nondisclosure, I have a concern that district courts, especially those sitting in a different circuit from the bankruptcy court, are

not in the best position to evaluate the impact of precluding suit when the bankruptcy court itself has not weighed in on the situation.

In fact, preventing Keathley's personal injury action might undermine the judicial system the doctrine claims to protect. The defendant here is in no way impacted by the delay in disclosure to the bankruptcy court. Yet, assuming arguendo it is responsible for the car crash, it receives an unwarranted windfall: it will owe nothing for its tort. Even further, Keathley is currently repaying his debts to his creditors in full (albeit, over time). If he receives no remedy for his injuries, it could harmfully impact his creditors' chance of recovery.

Other circuits take a more holistic approach than ours, suggesting that judicial estoppel is inappropriate when the bankruptcy proceedings will not suffer and when the alleged bad actors will receive a windfall. *See, e.g., Slater v. United States Steel Corp.*, 871 F.3d 1174 (11th Cir. 2017) (en banc); *Botelho v. Buscone* (*In re Buscone*), 61 F.4th 10 (1st Cir. 2023); *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542 (7th Cir. 2014); *Ah Quin v. County of Kauai Department of Transportation*, 733 F.3d 267 (9th Cir. 2013).

At bottom, the doctrine of judicial estoppel exists to "protect the integrity of the judicial process, by prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self-interest." *Allen v. C & H Distribs., LLC*, 813 F.3d 566, 572 (5th Cir. 2015) (alteration in original) (internal quotation marks and citation omitted). It is not a tool in the arsenal of potentially bad actors to reap a windfall. To me, it makes little sense for the defendant here to benefit from something it has no involvement in and for which the bankruptcy court does not appear to think the plaintiff should be sanctioned. In situations like this one—where the district court is in a different district and the case is still pending in bankruptcy court—I think the district court should defer to the bankruptcy court on whether a sanction is appropriate and, if so, whether it should be in the form of judicial estoppel benefiting a completely unaffected defendant. Thus, while I concur in the judgment in light of our precedent, I disagree with this outcome and would have dissented if we did not have prior precedents.

*Keathley*, 2025 WL 673434, at *8–9 (Haynes concurring).

In the court's view, Judge Haynes' urging of a "more holistic approach" in the bankruptcy estoppel context is consistent with the "totality of the circumstances" test adopted by the Supreme Court, and her view that "[a]t its core, judicial estoppel is equitable in nature" closely tracks the equity-based approach adopted by the Supreme Court. *Id.* at 8. While it is unclear to this court to what extent Judge Haynes' views will resonate with other Fifth Circuit judges, her concurrence at least provides some indication regarding how those judges might apply the equitable analysis required by the Supreme Court's opinion to this particular case. The evident support for Judge Haynes' views among U.S. Supreme Court justices is an important

factor in this court's decision to adopt the reasoning of her concurrence, but, that aside, it also fully agrees with her analysis on its merits.

Indeed, as quoted above, Judge Haynes raised the same equitable concerns about unpaid bankruptcy creditors and undeserved windfalls by tort defendants as this court had done, before similarly deciding that Fifth Circuit precedent did not permit consideration of these factors and that her hands were therefore bound. *Id.* It should therefore be unsurprising that this court chooses to adopt the reasoning of her concurrence in deciding how best to proceed on remand.

This court notes that Judge Haynes also addressed an additional issue in her concurrence, relating to the fact that, in this case, the plaintiff filed for bankruptcy in a different judicial district: the Eastern District of Arkansas. *Id.* This district lies within the jurisdiction of the Eighth Circuit Court of Appeals, and in their briefing, the parties recognized the Eighth Circuit as one of the federal circuits which have adopted a more lenient approach to judicial estoppel in bankruptcy cases. [*See,* e.g. plaintiff's brief at 23]. This court did not discuss the equitable implications of this fact in its order because 1) plaintiff improperly chose to raise it for the first time on rehearing and 2) the equitable considerations in this context were irrelevant under the two-part Fifth Circuit standard which this court was required to apply. *Keathley,* 706 F. Supp. 3d at 630. Now that the Supreme Court has made it clear that equitable standards do, in fact, apply in this context, however, this court concludes that the fact that plaintiff filed for bankruptcy in the much more permissive (in this context) Eight Circuit makes his failure to timely disclose his claim more excusable than if he had filed for bankruptcy in this circuit.

It seems clear that, in making arguments in this regard, plaintiff now finds himself in a more advantageous procedural position than when he first sought to address this issue on petition for rehearing. Needless to say, parties are generally not permitted to introduce new evidence and

10

to stake out entirely new theories of the case on motion for rehearing, and this court did not permit him to do so here.[1]  Even if this court had allowed plaintiff to first raise this issue on motion for rehearing, it seems clear that, as Judge Haynes acknowledged in her concurrence, it would not have been relevant under the narrow two-part test which previously governed this case.

This court now concludes that, since this case has been remanded based upon new governing authorities, it is only fair to grant both sides to this litigation a fresh start to make any arguments and present any proof which they deem relevant under these new standards.  In considering plaintiff's arguments in this regard, this court emphasizes that the Supreme Court has now made it clear that the Fifth Circuit is required to recognize equitable exceptions to judicial estoppel in at least *some* cases.  Moreover, this court believes that the fact that plaintiff filed for bankruptcy in a circuit which had a much more lenient judicial estoppel jurisprudence than the Fifth Circuit tends to support a finding that he committed an excusable "mistake" regarding what the governing legal standards permitted him to do.  Clearly, this places plaintiff in a much more favorable equitable position compared to a debtor who filed for bankruptcy in the Fifth Circuit, and who may thus be presumed to have been aware of the stringent standards which previously existed in this circuit.

In so stating, this court submits that bankruptcy is an area of the law which is frequently practiced by specialized local counsel who tend to get used to trying cases in a particular way. Moreover, bankruptcy counsel are generally paid a rather limited fee to perform one particular

---

[1] The proof which plaintiff sought to introduce in this regard included evidence that it is a "not uncommon" practice among debtors in the Eastern District of Arkansas to wait until a personal injury action is close to settling to amend their bankruptcy filings to disclose their claims. [Docket entry 168-5 at 2].

task: to file and litigate the bankruptcy. That being the case, it seems to be asking quite a lot of such counsel to not only litigate the bankruptcy issues before them, but to also anticipate and research the impact of the bankruptcy filings upon the litigation of a completely separate tort lawsuit in a different jurisdiction, which lawsuit will generally be handled by a different counsel. It further seems clear that the manner in which these practitioners try their cases may depend heavily upon the preferences of their local bankruptcy court. This is, presumably, why Judge Haynes wrote that "[i]n situations like this one—where the district court is in a different district and the case is still pending in bankruptcy court—I think the district court should defer to the bankruptcy court on whether a sanction is appropriate." *Id.*

This court agrees with Judge Haynes' observations in this regard, and it submits that the argument against a district court finding judicial estoppel is even stronger in cases where the bankruptcy case is not only pending in another district, but also in a different judicial *circuit*. This court believes that this argument becomes even stronger still when the two circuits in question have adopted starkly different approaches to judicial estoppel in the bankruptcy context, as is the case here. This court therefore regards these considerations as strongly militating against a finding of judicial estoppel in this case, even though, as Judge Haynes acknowledged in her concurrence, the two-part test which previously governed this case did not permit their consideration. This court believes that the broad "totality of the circumstances" standard recognized by the Supreme Court in this case does, in fact, permit their consideration, and it concludes that they support plaintiff's arguments in opposition to a finding of judicial estoppel.

Bankruptcy issues aside, this court also agrees with Judge Haynes that the circumstances of this case suggest that defendant is essentially seeking a windfall by arguing in favor of judicial

12

estoppel based on representations made in Arkansas bankruptcy proceedings in which it was not a creditor.  In expressing her views in this regard, Judge Haynes wrote that:

> The defendant here is in no way impacted by the delay in disclosure to the bankruptcy court. Yet, assuming arguendo it is responsible for the car crash, it receives an unwarranted windfall: it will owe nothing for its tort. Even further, Keathley is currently repaying his debts to his creditors in full (albeit, over time). If he receives no remedy for his injuries, it could harmfully impact his creditors' chance of recovery.

*Keathley*, 2025 WL 673434, at *8 (Haynes concurring).  This court agrees, and it submits that it should be difficult for defendant to summon a sense of righteous indignation that it is (potentially) being held accountable for the negligence of its employees, just like any other civil defendant.  It strikes this court that defendant's legal windfall in this regard is comparable to a hundred-dollar bill which it found lying on the street, and, while it seems clear that defendant has grown attached to this money, it does not have a particularly strong equitable claim to its ownership.

Of course, this consideration was of no relevance under the two-part test which previously governed this case, but this court believes that it is of at least some relevance under the equity-based approach endorsed by the Supreme Court.  Having said that, this court does doubt that this "windfall" argument, standing alone, would be sufficient to carry the day even under the "new" law, since the same argument could seemingly be made in many, if not most, bankruptcy estoppel cases.  Moreover, considering the highly stringent approach which prevailed in this circuit for decades, this court doubts that a majority of Fifth Circuit judges would be willing to offer blanket forgiveness to large numbers of debtors who intentionally fail to disclose claims, based solely on an argument that applying judicial estoppel would result in a windfall to defendants.  Still, this court believes that the existence of such a windfall is one factor which may appropriately be considered in deciding whether it would be equitable to excuse non-

13

disclosure of a claim. The same applies to Judge Haynes' observation that dismissing civil claims on a finding of judicial estoppel harms bankruptcy creditors by reducing the potential "pot" of assets for their recovery. This court has already noted its agreement on this point, and it believes that it offers at least some equitable support for not applying judicial estoppel in this case.

It thus seems clear that there are very real equitable downsides, and a very real societal price to be paid, for applying judicial estoppel to this case and other cases like it. As this court sees it, the public policy question in this regard is whether, by failing to timely disclose his claims, the plaintiff did something which was sufficiently reprehensible and damaging to the judicial process that federal courts should be willing to accept the harm which will be caused by punishing the debtor's behavior. This court agrees with Judge Haynes that, in this case, the mitigating factors resulting from plaintiff's filing for bankruptcy in a jurisdiction with lenient disclosure practices tends to support a conclusion that the plaintiff committed an excusable "mistake" regarding what he was legally permitted to do. That being the case, this court does not believe that it would be equitable and appropriate, under the totality of the circumstances of this case, to accept the harms and downside which would result from applying judicial estoppel here.

In so stating, this court recognizes that the general rule is that ignorance of the law is no defense. *See, e.g. United States v. Arthur Andersen, LLP*, 374 F.3d 281, 299 (5th Cir. 2004). To reiterate, however, a finding of judicial estoppel in the bankruptcy context has its own unique downsides which, this court believes, justifies particular caution in its application. In the court's view, it is fair and equitable for a federal court to conclude that, since applying judicial estoppel allows a negligence defendant to avoid accountability for its actions based on completely unrelated bankruptcy proceedings, and since its application harms the interests of creditors in the

14

bankruptcy proceedings by reducing the "pot" of potential recovery, the doctrine should not be applied in cases where the failure to disclose a claim was based on an understandable mistake of law. This court submits that this case, where plaintiff's bankruptcy counsel was proceeding in a circuit with much more lenient claim disclosure requirements than those in the Fifth Circuit, is one such case where equity counsels against a finding of judicial estoppel. Moreover, nothing in the Supreme Court's opinion bars the Fifth Circuit from reaching the same result based not upon a finding of mistake of law, but, rather, due to considerations of inter-circuit comity. If it chooses to adopt such an approach, the Fifth Circuit could simply conclude that, as a matter of comity and respect for the views of a sister circuit, it should not apply the very harsh doctrine of judicial estoppel based upon bankruptcy filings which, the plaintiff had reasonable cause to believe, were lawful in the jurisdiction where they were made.

This court therefore believes that there are multiple potential approaches to rejecting the application of judicial estoppel in this case, and it is strongly inclined to conclude that at least one of them is applicable here. Having said that, this court recognizes that defendant has every right to continue to argue this issue, including in a renewed summary judgment motion and on appeal if necessary. At the same time, this court's understanding is that no right to interlocutory appeal exists with regard to the denial of a motion for judicial estoppel, which means that (barring a rather dramatic change in this court's position) defendant will first need to litigate this tort action to a judgment before it continues the litigation of the judicial estoppel issues in this case on appeal. This is, of course, assuming that defendant chooses to continue to litigate this judicial estoppel issue at all, and this court encourages it to carefully consider whether, having already litigated this issue to the U.S. Supreme Court, this would be advisable.

That brings this court to the fact that this tort case was filed in 2021, which means that it may well be the oldest active case on its docket.  The Civil Justice Reform Act requires this court to make every effort to expedite such cases, and it therefore concludes that the judicial estoppel issues in this case should not stay the litigation of this case any further.  While nothing in this order is intended to prevent defendant from filing a renewed motion for summary judgment based on judicial estoppel, this court believes that, from a case management standpoint, the tort issues in this case are urgently in need of judicial attention and should go forward without delay.  That being the case, this court concludes that any renewed summary judgment motion based on judicial estoppel should only be filed after discovery has been completed regarding the tort issues in this case.  This will allow the tort and judicial estoppel issues to be addressed in the same order and thereby promote considerations of judicial economy.

So ordered, this the 20th day of July, 2026.

/s/ Michael P. Mills
U.S. DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

16